UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO: 1:07-CV-33-R

CHARLES A. THAXTON                                                                                          PLAINTIFF

v.

JACKIE STRODE, et al.                                                                                       DEFENDANTS

**MEMORANDUM OPINION**

     This matter is before the Court upon the Defendants' Motion for Summary Judgment (Docket #47). The Plaintiff has responded (Docket #56). The Court has granted the Defendants' request to submit their Motion for decision (Docket #62). This matter is ripe for adjudication. For the following reasons, the Defendants' Motion for Summary Judgement is **GRANTED**.

**BACKGROUND**

     On September 23, 2005, the Plaintiff Charles A. Thaxton listed his religious preference as Jewish on his Warren County Regional Jail ("Jail") Inmate Intake Questionnaire. On October 27, 2006, while incarcerated at the Jail, Thaxton requested to attend a Muslim religious service. Corrections Officer Steve Lashlee and Captain Patricia Johnson were on duty and denied the request.

     Thaxton then directed a grievance to Chief Deputy Jailer Gayle Easton. After conducting an investigation, she denied Thaxton's request on November 3, 2006, stating in her Investigator's Response: "Due to past history of violence/hatred between Muslims and Jewish religions, you will not be attending the service." On November 3, Thaxton appealed this denial to Jailer Jackie Strode. Jailer Strode also denied his appeal. On November 6, Thaxton filed a final appeal with Warren County Judge Executive Mike Buchanan. On February 9, 2007,

Buchanan concurred with the Jail's denial of Thaxton's grievance.

On February 20, 2007, Thaxton filed his complaint in this Court against Jailer Strode, Chief Deputy Jailer Easton, Captain Johnson, Corrections Officer Lashlee, in their individual and official capacities, and Warren County Regional Jail (construed by this Court as a claim against Warren County), alleging that he had been discriminated against on the basis of both his race and religion, in violation of 42 U.S.C. § 1983.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

To establish a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Here, the Plaintiff, Thaxton, contends that the Defendants violated his First Amendment right to freely exercise his religion when his request to attend a Muslim worship service on October 27, 2006 was denied. Thaxton also contends that the denial of his request was in violation of the Equal Protection guarantee of the Fourteenth Amendment, claiming he was treated differently because of his race.

## I. Qualified Immunity

The Defendants argue that they are entitled to qualified immunity in their individual capacities. In *Harlow v. Fitzgerald*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The sequence of analysis to determine qualified immunity is a two-step process that includes: (1) taking into consideration whether a constitutional right has been violated; and (2) if so, determining whether it is a clearly established right that a reasonable official under the circumstances should know. *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

### A. Equal Protection Claim

3

In his complaint, Thaxton alleges that he was subject to unconstitutional discrimination because of his race when Defendants denied his request and subsequent appeals to attend the Muslim worship service on October 27, 2006. Thaxton is African-American. Defendants note in their motion and Thaxton indicates in his reply that an additional alleged incident of racial discrimination occurred when Correction's Officer Lashlee told Thaxton that he had never seen a "black Jew" before.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which essentially means that all persons similarity situated should be treated alike. U.S. CONST., amend. XIV. *City of Cleburne Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985). "'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'" *Henry v. Metropolitan Sewer Dist*., 922 F.2d 332, 341 (6th Cir.1990) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc)).

However, a claim that the plaintiff was treated one way and everyone else was treated another way, by itself, is insufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir.1992), cert. denied, 510 U.S. 842 (1993). The plaintiff must show that the law was applied differently to him because of his race, gender, age, or some other improper classification. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir.1985) (Conte, J., concurring).

When Thaxton appealed his request to attend the Muslim worship service, Chief Deputy Jailer Eston responded that: "Due to past history violence/hatred between Muslims and Jewish religions, you will not be attending the service." In her affidavit, Jailer Eston explains that, at

4

the request of practicing Muslim inmates, non-Muslim inmates are not initially allowed to attend Muslim worship services until they have participated in an inmate-run Muslim familiarization program. At no time did any Muslim inmates at the Jail request or consent to Thaxton's participation in the Muslim service and Thaxton himself never asked to participate in the familiarization program.

There is no evidence in the record to support the contention that Thaxton was discriminated because of his race or religion. At most, Thaxton was prohibited from attending a single Muslim service out of deference to a policy requested by the practicing Muslim inmates and the fact that Thaxton is himself a self-declared Jew, not a practicing Muslim.

In regard to the alleged comment of Correction's Officer Lashlee, calling Thaxton a "black Jew," by itself, does not amount to a constitutional violation. In *Torres v. Oakland County*, the Sixth Circuit held that the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, do not alone give rise to constitutional violations. 758 F.2d 147, 152 (6th Cir.1985). Furthermore, the petty exchanges of insults between a prisoner and guard do not amount to constitutional torts. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.1987) (per curiam). However, the continual use of racially or ethnically charged slurs could constitute an impermissible violation. *Torres*, 758 F.2d at 152.

Here, it is disputable whether or not Correction's Officer Lashlee's comment that Thaxton is a "black Jew" is discriminatory. Thaxton is, in fact, African American and Jewish. Regardless of that fact, however, Correction's Officer Lashlee's single comment, with nothing more, did not rise to the level of a constitutional violation.

Based upon the analysis above, neither of Thaxton's Equal Protection claims amount to

constitutional violations. Therefore, qualified immunity applies.

### B. First Amendment Claim

Prisoners are not without the protections of the First Amendment while incarcerated, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz v. Beto*, 405 U.S. 319 (1972) (*per curiam*). However, such constitutional protections can be limited in the context of valid penological objectives. *O'Lone*, 482 U.S. at 348; *Pell*, 417 U.S. at 822-23. Thus, even where they may infringe on a prisoner's constitutional rights, prison regulations that are "reasonably related to legitimate penological interests" are valid. *O'Lone*, 482 U.S. at 349; *Turner v. Shafley*, 482 U.S. 78, 89 (1987).

In *Turner v. Shafley*, the Supreme Court adopted a four factor test to determine whether a prison regulation is reasonable. 482 U.S. at 89-91. The four factors are: "(1) whether there is a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns." *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (quoting *Turner*, 482 U.S. at 89-91).

The denial of Thaxton's request to attend Muslim worship services on October 27, 2006 is logically connected to the legitimate concerns of safety and good order. Jailer Strode's affidavit explains that the denial was based on the potential violence that might erupt if Thaxton,

a declared Jew, attended a Muslim worship service, and out of deference to practicing Muslim inmates, who requested that non-Muslim inmates undergo a Muslim inmate-run familiarization program before attending Muslim services. Thaxton's past criminal history and previous involvement in several safety and security breaches during his incarceration at the Jail also contribute to the legitimacy of the prison officials' concerns.

 Significantly, Thaxton has alternative means of exercising his freedom of religion. Thaxton never articulated an interest in converting to Islam. In fact, in his reply Thaxton clearly states that he "does not wish to become Muslim." Rather, his intention is to "worship and learn all that he can about God." In this pursuit, Thaxton is free to participate in the Muslim familiarization program, read the Qur'an, meet with Muslim religious leaders, request attendance at future Muslim services, as well as continue his practice of attending Jewish, Christian, and Catholic services.

 The extent to which accommodation of Thaxton's request to attend Muslim services will impact the prison staff is unclear; however, the record suggests that it is at the request of practicing Muslim-inmates, not a distinct prison policy, that prisoners must first request attendance at Muslim worship services at the Jail.

 Regarding the fourth and final factor, the Court in *Turner* explained that "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." 482 U.S. at 90-91. In his reply, Thaxton offers no alternative that

accommodates his rights. However, Thaxton does state that he was never offered the opportunity to participate in any Muslim familiarization program, nor did the posted Jail rules indicate that such an opportunity was available. In the future, Defendants may seek to accommodate these complaints; however, they are insufficient alone to suggest that the denial of Thaxton's request was unreasonable.

Based upon the analysis above, the record clearly indicates that the denial of Thaxton's request was reasonably related to a the legitimate penal objectives of safety and good order. Accordingly, no constitutional violation occurred and qualified immunity applies.

## IV.  Official Capacities

Thaxton's claims against Defendants in their official capacities is equivalent to a suit against the entity on whose behalf they acted - Warren County. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (citing *Monell v. New York Depart of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Therefore, the claims against Defendants Strode, Easton, Johnson, and Lashlee,
in their official capacity are dismissed and will be applied to Warren County, Kentucky.

## V.  Municipal Liability

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality may be liable under § 1983 through: (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-84 (1986); *Monell*, 436 U.S. at 661,

694; *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

Here, Thaxton has failed to produce any evidence demonstrating that Warren County acted with disregard to the constitutional rights of inmates at the Warren County Regional Jail by condoning or allowing its corrections officers to discriminate against inmates on the basis of race and/or religion, and, therefore, the Plaintiff's claim against Warren County fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.